598 So.2d 423 (1992)
STATE of Louisiana
v.
Freddie COOK.
No. 91-KA-943.
Court of Appeal of Louisiana, Fifth Circuit.
March 31, 1992.
*424 William B. Birner, Brenda Braud Birner, Laplace, for defendant/appellant Freddie Cook.
Rodney Brignac, Edgard, for plaintiff/appellee State of Louisiana.
Before BOWES, GRISBAUM and CANNELLA, JJ.
CANNELLA, Judge.
Defendant, Fred Cook[1], appeals his conviction of two counts of distribution of cocaine, a violation of La.R.S. 40:967 A(1). He also appeals his sentence of 15 years at *425 hard labor, on each count, consecutive, and a fine of $5,000. We affirm in part, reverse in part and remand.
On appeal, defendant complains that a mistrial should have been granted due to outbursts by several members of the jury venire who expressed opinions relative to defendant's guilt which tainted the entire venire and was so prejudicial as to deny him a fair trial. Defendant also asserts that the trial judge abused his discretion in not complying with the sentencing guidelines of La.C.Cr.P. art 894.1 and in imposing an excessive sentence.
In the trial, Detective Bridget Dinvaut of the St. John the Baptist Parish Sheriff's Office testified regarding the undercover narcotics operation, code named DNEF, which resulted in defendant's arrest. She stated that the purpose of the operation was to acquire undercover agents to send into the streets of St. John the Baptist Parish for drug purchases. In conjunction with this program, on September 6, 1990, she and two other officers met with Deputy Vincent Stewart, also know as Agent Alvin, to make arrangements for an undercover operation. At approximately 9:30 p.m. the officers met at a prearranged location where Agent Alvin was provided with $200.00 in cash to buy drugs. He was also provided with an electronic surveillance device (body wire). Agent Alvin then proceeded to the Bumble Bee Bar on River Road in Reserve, Louisiana to attempt to make drug purchases. He arrived there at approximately 11:00 p.m. After mingling with the crowd and buying a beer, Agent Alvin was advised by Chippy Alexander that defendant might have some drugs to sell. According to Agent Alvin, Alexander nodded to defendant inside the bar and defendant then followed the officer outside. Defendant produced a match box from his pocket revealing a rock substance. Agent Alvin purchased a $20.00 rock at this time. After purchasing the drugs, Agent Alvin left the area, went to a prearranged location, and turned the evidence over to Officer Franks. A preliminary field test proved positive for the presence of cocaine. Agent Alvin informed Officer Franks that he knew the subject from whom he had purchased the drugs through various athletic events in the parish and from high school football. Early the next morning he identified defendant in a photographic identification book.
Two days later, on September 8, 1990, the officers again met and Agent Alvin was supplied with $125.00 in cash and body wiring. Agent Alvin again proceeded to the Bumble Bee Lounge, went inside and saw some people dancing, including defendant, whom he recognized. A few minutes later, Agent Alvin told defendant of his desire to purchase drugs. The two proceeded to the officer's vehicle and Agent Alvin purchased two rocks of crack cocaine for $20.00 each. Agent Alvin put the rocks inside a bag, proceeded to a prearranged location and turned the evidence over to Officer Franks. It proved to be cocaine after a preliminary field test. Agent Alvin testified that he was certain of the identity of the individual from whom he purchased the drugs on this occasion. He later positively identified defendant in court as the individual from whom he purchased the cocaine on September 6, 1990 and September 8, 1990.
Dwayne Courville of the Louisiana State Police Crime Lab testified that the analysis of the evidence proved that the rock-like substances were in fact cocaine.
Defendant testified at trial that he did not remember his whereabouts on September 6 or 8, 1990. He specifically denied selling cocaine to Agent Alvin. Defendant admitted to a previous drug addiction resulting from a knee injury. He testified that he had stopped using drugs after participating in a rehabilitation program provided by his employer. Defendant further testified that he had been contacted by the St. John the Baptist Parish Sheriff's Office prior to the incident, because they wanted him to set up drug dealers. He had refused to cooperate because the officers were not able to protect him or his family.
After listening to all the testimony, the jury found defendant guilty of both counts of distribution of cocaine.
*426 In the first assignment of error, defendant contends that repeated outbursts by members of the jury venire took away his presumption of innocence. He asserts that the comments were so prejudicial that he was unable to obtain a fair trial. Defense counsel moved for a mistrial following completion of voir dire because of comments made by prospective jurors Donaldson, Dottolo, Tregre and Young. Those prospective jurors felt that defendant must have done something wrong or he would not have been arrested, charged and brought to trial. Defendant contends that the issue is not whether challenges for cause could have been and were made, but rather whether a panel may be so prejudiced by what it hears by repetitive and emphatic commentary that, taken as a whole, it had to affect at least some of the jury such as to influence the reasonable doubt standard.
Under La.C.Cr.P. art. 775 a mistrial may be ordered, and in a jury case the jury dismissed, "when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771 ..."
The determination as to whether a mistrial should be granted under this provision is within the sound discretion of the trial judge, and the denial of a motion for mistrial will not be disturbed on appeal absent an abuse of that discretion. It should be granted only where the defendant suffers such substantial prejudice that he has been deprived of any reasonable expectation of a fair trial. State v. Smith, 433 So.2d 688 (La. 1983).
In State v. Monroe, 397 So.2d 1258 (La. 1981), cert. denied, 463 U.S. 1229, 103 S.Ct. 3571, 77 L.Ed.2d 1411 (1983), rehearing denied, 463 U.S. 1249, 104 S.Ct. 36, 77 L.Ed.2d 1455 (1983), defendant argued that the trial judge erred in denying his motion for mistrial when a prospective juror stated, "I don't think [the defendant] would be here if the district attorney didn't think he did something." State v. Monroe, supra at 1265. The defendant asserted that, since the jurors heard this remark, they were influenced by it, and consequently he would be unable to receive a fair trial. The Louisiana Supreme Court disagreed, reasoning as follows:
The jurors who were chosen swore to accept the law as given to them by the judge. They were instructed on the presumption of innocence. Implicit in defendant's argument is the assumption that, because the jurors heard this remark, they were unable to accept the law as given to them by the judge. We do not believe this prospective juror's statement could have had such an impact. The complained of remark was a typical misconception of the lawthe type that voir dire is designed to dispel. State v. Monroe, supra at 1266.
In State v. Young, 469 So.2d 1014 (La. App. 1st Cir.1985), defendant argued that the trial court erred by failing to summon a new jury venire or grant a mistrial because the current venire had been tainted by prejudicial comments and newspaper reporting. During the voir dire in Young, several prospective jurors testified that they believed defendant was guilty based on information received through media reports. After the first two of those jurors were excused, defense counsel moved for a new jury venire to be impanelled because of the impact of the statements. The trial court denied defendant's motion. At the conclusion of the selection of the jury, defendant again objected to the jury venire. In upholding the decision of the trial judge, the appellate court stated as follows:
The defense was entitled to challenge for cause those prospective jurors who stated that they had been influenced by this testimony, or who had formulated an opinion as to the guilt or innocence of the accused. The transcript of the voir dire indicates that the trial court carefully monitored the responses by the prospective jurors, and excused any jurors who might possibly have been influenced by statements indicating any preconceived opinions. To quash the entire venire on the basis of exposure to one source of information would seem a meaningless gesture, particularly when the voir dire process remains available. State v. *427 Bland, 419 So.2d 1227 (La.1982). Barring a showing of actual bias or lack of impartiality, the defendant's objection to the jury venire was properly denied.
Defendant further contends the trial court erred in failing to grant a mistrial, based on the same allegations of a tainted jury ... he does not show that the statements by the prospective jurors made it impossible for him to obtain a fair trial or operated as a legal defect in the proceedings. LSA-C.Cr.P. art. 775. The record establishes that the jurors selected were fair and impartial. The trial court did not err by failing to grant a mistrial.
During the course of voir dire, Price Donaldson expressed his opinion that "they ought to take away the drug dealers and lock them up and throw away the key." He stated that he did not think he could be fair because of his feeling about the drug situation and because he believed someone arrested and accused of drugs is more likely than not to have committed the crime. Tony Dottolo said that he did not think he could be fair because of how he felt in general about the drug problem and that he believed someone arrested and accused of drugs by the sheriff and the state is more likely than not to have committed the crime. Glen Tregre stated that, since defendant was picked up and was in court, he must have done something wrong. Alfred Young said that he did not think he could give defendant a fair trial because he did not like drug dealers, pushers, or users and that, if defendant was picked up, he must have done something wrong.
Even though these comments insinuated defendant's guilt and were heard by some other prospective jurors, we find that they did not affect defendant's right to a fair and impartial jury. The judge excused all four prospective jurors, Donaldson and Dottolo for cause and Tregre and Young because they were not needed. All other prospective jurors, who gave an indication during voir dire that they could not be fair, were also excused.
When Donaldson and Dottolo made their comments, seven jurors had already been selected and had left the courtroom. They were not exposed to the comments. Also, both defense counsel and the State had several peremptory challenges which they did not use. If defendant felt any of the jurors picked were unfair, he could have used his peremptory challenges. He also could have challenged for cause those jurors who stated they had preconceived notions as to his guilt. LSAC.Cr.P. art. 797; See State v. Brown, 496 So.2d 261 (La.1986).
The jurors who were chosen herein swore to accept the law as given to them by the trial judge. They were instructed on the presumption of innocence, the burden of proof necessary to sustain a conviction and the evidence which could not be considered in reaching a verdict. The record reflects that the jurors selected were fair and impartial. Thus, we find the trial judge did not err in denying defendant's motion for a mistrial.
In his second assignment of error, defendant complains that the trial judge failed to follow the sentencing guidelines of C.Cr.P. 894.1 by not individualizing the sentence and by not considering any mitigating circumstances. In his third assignment he asserts that the sentence is excessive. Since both of these assignments relate to sentencing, they will be addressed as one issue.
Defendant was convicted of two counts of distribution of cocaine in violation of R.S. 40:967 A(1). According to R.S. 40:967 B(1) anyone who violates Subsection A with respect to a substance classified in Schedule II, which is a narcotic drug, shall be sentenced to a term of imprisonment at hard labor for not less than five years nor more than thirty years, and may, in addition, be sentenced to pay a fine of not more than $15,000. Here, defendant was sentenced to 15 years at hard labor on each count, to run consecutively, and to pay a fine of $5,000.
The law regarding excessive sentences has been repeatedly set forth by this Court. In State v. Jones, 559 So.2d 492 (La.App. 5th Cir.1990), writ denied, 566 So.2d 981 (La.1990), this court stated as follows:

*428 "The courts are prohibited from imposing cruel, excessive or unusual punishment by Article I, Section 20 of the Louisiana Constitution of 1974. Sentences which are `grossly out of proportion to the severity of the crime' or `nothing more than the purposeless and needless imposition of pain and suffering' are excessive... even sentences which are within statutory limits may violate a defendant's constitutional right against excessive punishment ... (citations omitted). See also at page 495, State v. Camp, 580 So.2d 957 (La.App. 5th Cir. 1991).
On page 720 in State v. Soco, 441 So.2d 719 (La.1983), [appeal after remand, 508 So.2d 915 (La.App. 4th Cir.1987) ], the Louisiana Supreme Court discussed the elements which should be considered before imposing sentence as follows:
"While the trial judge need not recite the entire article 894.1 checklist of aggravating and mitigating factors, the record must reflect that the judge adequately considered the guidelines ... Important elements which must be considered are the convict's personal history (age, family ties, marital status, health, employment record), prior criminal record or absence thereof, seriousness of the particular offense, and the likelihood of recidivism or rehabilitation ... Further the judge must state for the record the factual basis therefor. C.Cr.P. art. 894.1(C)... The judge must, in effect, justify his sentence with factual reasons.
The law is well settled that a remand for resentencing will be necessary when L.S.A.C.Cr.P. art. 894.1 has not been adequately complied with and when there is serious lack of evidence to support the sentence imposed in relation to the particular offense committed." ... (citations omitted).
Concerning whether the trial judge complied with the sentencing guidelines, the record reflects that in the sentencing judgment the trial judge stated that:
"The sale and distribution of illegal drugs which result in many cases as an addiction is considered by this court as well as our State Supreme Court to be a serious offense. In my opinion the sentence should have been expected by the Defendant while he was involved in his illegal activity."
However, on the same day he issued a "supplemental judgment" in which he stated, in part, as follows:
"Fred Cook is a high school graduate who had been awarded an athletic scholarship to Arkansas State University which he lost due to a knee injury during football practice.
This court is going to bring to Mr. Cook's attention several methods of correspondence study and assist in the financing of any program he chooses. Upon completion of a valid academic course leading to gainful employment, this Court will substantially reduce defendant's thirty (30) year sentence.
In the event Mr. Cook could at some point during his incarceration furnish this court with written confirmation of employment in the event he were to be released, I would seriously consider it."
Our review indicates that the trial judge failed to comply with the sentencing guidelines and failed to individualize the sentence to this particular offense and offender. While this in and of itself is an insufficient basis to vacate the sentence, it is sufficient when the record fails to support the sentence. La.C.Cr.P. 881.6. In this case, the supplemental judgment and record reflect that the trial judge considered in mitigation that defendant was a high school graduate who had been awarded an athletic scholarship to Arkansas State University, but he failed to consider several other mitigating factors which were contained in the record including the following: the relatively small amount of cocaine which was sold to the same undercover agent within a short period of time (2 days); defendant's claim that he had a stable work history; his support of his five children; his admission to a prior drug addiction for which he entered a drug rehabilitation program. Furthermore, the trial judge supplemented the judgment the same day that he signed the sentencing judgment *429 to reflect that he would reduce the sentence if defendant met certain educational and employment conditions. It is apparent that the trial judge did not believe defendant deserved the lengthy sentence (total of 30 years at hard labor) that he had imposed, if defendant could, by meeting certain conditions, extricate himself from prison and obtain probation after a short time. See La.C.Cr.P. art. 881.[2]
In State v. Gordon, 444 So.2d 1188 (La. 1984), on remand, appeal transferred, 471 So.2d 815 (La.App. 2nd Cir.1985), defendant was sentenced to 20 years at hard labor on two counts of distribution of cocaine and one count of conspiracy to distribute cocaine. The court concluded that the 20 year sentence for distributing four ounces of cocaine on two occasions only six weeks apart to the same undercover agents was excessive. The court cited the defendant's stable employment record and the absence of prior criminal activity to support its ruling.
In State v. Tilley, 400 So.2d 1363 (La. 1981), the Supreme Court held that imposition of 21 years at hard labor and a fine of $10,000 upon an 18 year old first felony offender convicted of distribution of cocaine was excessive. In so holding, the Supreme Court stated: "In our view, the range of constitutionally permissive sentences in cases of this sort would be from the statutory minimum to as much as ten years." State v. Tilley, supra at 1368.
In State v. Davis, 563 So.2d 473 (La.App. 1st Cir.1990), defendant was convicted of distribution of cocaine and was sentenced to 15 years at hard labor. In finding the sentence to be excessive, the court considered that defendant was 30 years old, had no prior criminal record, and had been employed on a regular basis since he dropped out of school.
In State v. Strickland, 486 So.2d 1015 (La.App. 2nd Cir.1986), defendant pled guilty to possession of cocaine with intent to distribute and was sentenced to 20 years at hard labor. The court concluded that the sentence was unconstitutionally excessive, considering defendant's young age, her dependents, her employment record, absence of prior and post criminal activity and relatively small amount of cocaine involved. On remand, the trial judge reimposed the 20 year sentence. On appeal from remand, State v. Strickland, 505 So.2d 752 (La.App. 2nd Cir. 1987), the appellate court again set aside the 20 year sentence as excessive and remanded the matter for resentencing with instruction to resentence defendant to a term of not less than five nor more than eight years at hard labor.
Based on the foregoing we find the sentence excessive, as well as rendered without proper consideration of the sentencing guidelines of La.C.Cr.P. art. 894.1.[3]
La.C.Cr.P. art. 920 provides: "the following matters and no others shall be considered on appeal: (1) an error designated in the assignments of error; and (2) and error that is discoverable by a mere inspection of the pleading and proceedings and without inspection of the evidence."
For the purpose of an error patent review the "record" in a criminal case includes the caption, the time and place of holding court, the indictment or information and the endorsement thereon, the arraignment, the plea of the accused, the bill of particulars filed in connection with a *430 short form indictment or information, the mentioning of the impaneling of the jury, the minute entry reflecting sequestration in a capital case, the verdict, and the judgment or sentence. See State v. Oliveaux, 312 So.2d 337 (La.1975) and State v. Weiland, 556 So.2d 175 (La.App. 5th Cir.1990).
We have reviewed the record for errors patent and find several errors involving the sentence: 1) the defendant was not given credit for time served (La.C.Cr.P. art. 880); and 2) the judge failed to specify on which count the $5,000 fine was imposed. We also note that the sentencing hearing, reasons and imposition of sentence were not recorded by a court reporter. We order, herein, that the entire sentencing proceeding be recorded by a qualified court reporter. For these reasons, as well as the foregoing, we remand the case for reassignment to another judge for resentencing. See: State v. Soco, 441 So.2d 719 (La.1983).
Accordingly, the defendant's conviction is hereby affirmed, but the sentence is vacated and the case is remanded for reassignment to another judge of the 40th Judicial District for resentencing in accordance with the provision of La.C.Cr.P. art. 894.1.
AFFIRMED IN PART; VACATED IN PART AND REMANDED.
NOTES
[1] The bill of information and the judgment refer to defendant as Fred Cook; however, other portions of the record refer to defendant as Freddie Cook.
[2] La.C.Cr.P. art. 881 states:

A. Although the sentence imposed is legal in every respect, the court may amend or change the sentence, within the legal limits of its discretion, prior to the beginning of execution of the sentence.
B. After commencement of execution of sentence, in felony cases in which the defendant has been sentenced to imprisonment without hard labor and in misdemeanor cases, the sentencing judge may reduce the sentence or may amend the sentence to place the defendant on supervised probation. If a sentence is reduced or amended, a copy of the minute entry reflecting the judgment reducing or amending the sentence shall be furnished to the district attorney and the arresting law enforcement agency.
[3] Defendant also contends the trial judge erred in ordering consecutive sentences. In light of our decision that the sentence is excessive, we need not address this issue. However, see La. C.Cr.P. art. 883 which provides the guidelines in this respect and indicates the trial judge did not err in this regard.